**Martin GROSS, Petitioner,**

v.

**COMMANDING OFFICER, FORT DEVENS, Department of the United States Army, Fort Devens, Massachusetts, Defendant.**

**Misc. Civ. No. 68–79.**

United States District Court
D. Massachusetts.

July 30, 1969.

John C. Cratsley, Cambridge, Mass., for petitioner.

Herbert F. Travers, Jr., U. S. Atty., Stanislaw R. J. Suchecki, Asst. U. S. Atty., for respondent.

## OPINION

JULIAN, District Judge.

The petitioner, Martin P. Gross, filed a petition [1] for a writ of habeas corpus in which he alleges that he "is presently being detained and is in the custody of the defendant, Commanding Officer, United States Army, Fort Devens, Massachusetts," in violation of his rights under the Constitution of the United States. He claims that he was illegally inducted into the United States Army. He prays that he "be ordered discharged from the aforesaid detention and custody."

Specifically the petitioner claims that the pre-induction physical reexamination given him on July 24, 1967, and the physical inspection given him on November 8, 1967, immediately before he was inducted, violated Army Regulation 601–270, in that they failed to comply with the requirements of paragraphs 69a and 69c of Section III of Chapter 3 of the Army Regulation.[2] He claims that this

1. The petition is signed by the petitioner but it is not verified either by him or by someone acting in his behalf as required by 28 U.S.C. § 2242. Since the defendant has not objected to the petition on this ground, the Court considers the defect waived.

2. The pertinent paragraphs of Army Regulation 601–270 provide as follows:

"69. *Induction Medical Examination.*
a. *Physical Inspection.*

(1) *General.* Registrants or applicants for induction or enlistment, who have undergone a medical examination of the prescribed scope within 1 year prior to the induction processing and have been found medically qualified, will undergo a physical inspection.

(2) *Scope of physical inspection.* The examining physician will review the previous medical examination reports (SF's 88 and 89) and any accompanying additional documents and discuss with the examinee any intervening injuries and illnesses, or any other health problems not a matter of record. The examinee, with clothing removed, will be closely observed by the examining physician to detect the presence of any communicable diseases and apparent defects not previously recorded. Physical inspections may be performed at the recruiting activity, effecting enlistments, provided a medical officer is assigned to that activity.

\*     \*     \*     \*

(5) *Recording of findings.* When no additional defects are discovered, a statement will be made by the physician completing the inspection in item 73, SF 88, as follows:

"Physical Inspection, Date ———:
AFES ————— —————
                  Station         State
No additional defects discovered.
(Fit)          (Unfit) for military service.
————————— When additional de-
  Signature
fects are found, the medical officer will line out the word "No" and specify the defects under item 73. The word "Fit" or "Unfit" will be lined out as appropriate.
\*   \*   \* "

\*     \*     \*     \*     \*

"69c. *Reexamination of previously disqualified registrants.* Registrants appearing for reexamination because of previous disqualification for remediable medical defect(s)

failure to follow the Army Regulation denied him the right and opportunity to be found medically unqualified for military service as provided by 50 App. U.S.C. § 454(a).[3]

Petitioner contends that denial of such "right and opportunity * * * amounts to a violation of his right to due process of law" and renders his induction illegal and void.

Petitioner's contentions are made more explicit in his "Memorandum of Points and Authorities" filed in support of his petition. At pages 12–13 he states:

"Petitioner has alleged that he is being held illegally by the defendants [sic]. Consequently, they are without jurisdiction to proceed with any of the suggested administrative proceedings they urge Petitioner to take. This being so, several irreparable personal injuries will fall to Petitioner from being compelled to pursue his administrative remedies. First, his personal freedom will continue to be illegally curtailed. * * * Secondly, * * * [n]ot only does any discharge investigation harm Petitioner's personal reputation, but any risk that he would be tried for misconduct by an agency which he asserts has no jurisdiction to do so establishes 'irreparable injury.' "

In his return to the Court's order to show cause why the writ should not issue, the defendant alleges that he holds the petitioner, Private First Class Martin P. Gross, by authority of the United States "as a member of, and a prisoner in the custody of, the United States Army under the following circumstances:

" * * * Gross was duly and lawfully inducted as a member of the United States Army * * * at the Armed Forces Examining and Entrance Sta-

tion, Boston, Massachusetts, on 8 November 1967 for a term of two years. * * * Gross, having been lawfully ordered to report to the United States Army Overseas Replacement Station at Fort Dix, New Jersey, did, on or about 28 June 1968, fail to follow such orders and became absent without authority, remaining so absent until he surrendered himself at Fort Devens, Massachusetts, on 23 November 1968, and was thereupon committed to the Respondent as Commanding General of Fort Devens. * * * "

Defendant prays that the petition for the writ be dismissed.

A full evidentiary hearing was held on the petition.

## FINDINGS OF FACT

Petitioner was born in Newark, New Jersey, on November 30, 1945. On June 8, 1965, he returned his Selective Service Classification Questionnaire (SSS Form 100) (Exhibit 10) to Local Board No. 72, Gloucester, Massachusetts, where he then resided. The Questionnaire was completed and signed by petitioner on June 4, 1965. He was then a student at Boston College and had completed two years of college, majoring in pre-medical courses and preparing for admission to medical school. He expected to graduate from college in June 1967.

Series XI (Physical Condition) of the Questionnaire contained this question:

"2. If you have any physical or mental condition which, in your opinion, will disqualify you for service in the Armed Forces, state the condition and attach a physician's statement."

His answer was, "Does Not Apply." On October 18, 1965, he was classified 2–S (student deferment).

will, if the previous examination was conducted within 1 year, undergo a physical inspection (a above). The physical inspection will place emphasis on the previously disqualifying defect(s). If more than 1 year has elapsed since the previous examination, the registrant will be given a complete examination (para 68h)."

3. The pertinent provision of the statute reads as follows:

"No person shall be inducted into the Armed Forces for training and service * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense * * *."

On November 29, 1966, petitioner was given a pre-induction medical examination at AFEES, Boston, and was found medically disqualified for military service because of hypertension. His blood pressure readings were 150–mm/110–mm, 148/84 and 152/84.[4] The higher numbers refer to the systolic pressure, the lower numbers to the diastolic.

Accordingly petitioner on January 19, 1967, was reclassified 1–Y (qualified for military service only in time of war or national emergency) until February 1967.

Petitioner was notified of the reclassification by means of SSS Form 110 (Exhibit 11) mailed to him on January 20, 1967. He did not appeal from the reclassification.

In June 1967 petitioner graduated from Boston College with the degree of Bachelor of Science in Biology.

On June 20, 1967, the Local Board by means of SSS Form 223 ordered petitioner to report on July 24, 1967, for an Armed Forces physical examination.

Form 223 contains the following statement in large type:

#### "IMPORTANT NOTICE

(Read Each Paragraph Carefully)

To All Registrants:

\*   \*   \*   \*   \*   \*

If you have any physical or mental condition which, in your opinion, may disqualify you for service in the armed forces, bring a physician's certificate describing that condition, if not already furnished to your Local Board."

Petitioner reported for the examination as ordered.

On July 24, 1967, petitioner was medically examined by a physician, Lieutenant Kenny, M. C., U. S. N. Lieuten-

ant Kenny, now a practicing physician in civilian life, also testified before me. I find that the examination met the requirements of AR 601–270, par. 69 (see footnote 2 above). The examining physician placed emphasis on the petitioner's hypertension, the previously disqualifying defect. As part of the examination four blood pressure readings were taken and found to be 136/80, 138/80, 135/80, and 138/80, all of them well under the limits stated in AR 40–51, 2–19 (see footnote 4 above). A total of seven blood pressure readings were taken in the pre-induction examinations of November 26, 1966, and July 24, 1967. The preponderant readings were within the prescribed limits. Dr. Kenny found the blood pressure of petitioner acceptable on July 24, 1967, and so noted on Form 88 (Report of Medical Examination), item 73, (Exhibit 1). I find that the examination of July 24, 1967, was medically adequate and fully complied with AR 601–270, par. 69c. Contrary to the allegation in paragraph 6 of the petition, I find that on July 24, 1967, the petitioner's blood pressure was "checked in a medically recognized manner."

Petitioner was found fully acceptable for induction into the Armed Forces and was so notified on Form DD 62 on July 28, 1967 (Exhibit 10F).

On August 17, 1967, petitioner was reclassified I–A and notice of the classification (SSS Form 110) (Exhibit 11) was mailed to him on the following day. This notice also informed petitioner of his right to a personal appearance before the Local Board and of his right to appeal from his classification. Although petitioner knew he had these rights, he did not request a personal appearance and he did not appeal.

On October 18, 1967, petitioner was ordered to report for induction on No-

---

4. Army Regulation 40–501 contains the following provisions:

  "2–19. Vascular System. The cause for rejection for . . . induction are:

    \*   \*   \*   \*   \*

  b. Hypertension evidenced by preponderant blood pressure readings of 150–mm or more systolic in an individual over 35 years of age or preponderant readings of 140–mm or more systolic in an individual 35 years of age or less. Preponderant diastolic pressure over 90–mm diastolic is cause for rejection at any age."

vember 8, 1967 (Exhibit 10E). The order to report had the following statement printed on it in large type:

"IMPORTANT NOTICE.

(Read Each Paragraph Carefully)

\* \* \* \* \* \*

If you have any physical or mental condition which, in your opinion, may disqualify you for service in the Armed Forces, bring a physician's certificate describing that condition, if not already furnished to your Local Board."

Petitioner reported for induction November 8, 1967, as ordered. Before being inducted he was subjected to a physical inspection in substantial compliance with AR 601–270, par. 69a, quoted above, and was found "fit for military service."

I find that the physical inspection was medically adequate.

The result of the inspection was recorded on Form 88, item 73 (Exhibit 1) by Dr. Kenny who conducted the inspection.

Petitioner was then inducted into the military service.

Petitioner testified that at the induction station on November 8, 1967, he tendered to Armed Forces a letter (Exhibit 4) from the head nurse at the Boston College infirmary which stated among other things that on October 25, 1965, petitioner's blood pressure was found to be 160/110 and on October 28, 1965, 170/100. He testified that he also requested blood pressure tests and that none were given. On the basis of the credible evidence I find that the letter (Exhibit 4) was never tendered and that no request for blood pressure tests was ever made.

Petitioner testified that he had obtained a letter from a Dr. O'Donnell relative to his condition. "It said something about the fact that I had been treated but it didn't give any data that I can remember. So I didn't know whether I was going to bother with that one because I didn't think it was affirmative enough to be used." This letter was not produced at the trial. Its unavailability was not shown. Dr. O'Donnell was not called as a witness and it was not claimed or shown that he was unavailable.

Petitioner did not bring any physician's certificate at the examinations of November 29, 1966, July 24, 1967, or November 8, 1967, nor had he furnished any to his Local Board.

Petitioner presented no evidence of any kind at the examination of November 8, 1967, tending to show that the condition of his blood pressure had deteriorated since the examination of July 24, 1967. Nor did he furnish any information either orally or in writing tending to show any intervening injuries and illnesses, or any other health problems not already a matter of record before the Local Board or the Armed Forces examining physicians.

At no time before or during the physical inspection which preceded his induction did petitioner inform the physician conducting the physical inspection that he had suffered from hypertension since the physical examination of July 24, 1967.

Dr. Davidoff, who examined petitioner at the latter's request on July 17, 1968, states in his report (Exhibit 6):

"It is relevant that there is a family history of high blood pressure with his [petitioner's] father having 'severe' hypertension leading to a stroke and myocardial infarction at age 64."

The only information ever given by petitioner to the Local Board or the Armed Forces, however, concerning his father appears in the "Report of Medical History" dated November 29, 1966, on Form 89, item 18 (Exhibit 1), where the father's age is stated to be 58, the state of his health "poor," and check marks appear under "Yes" opposite "had heart trouble," and "had asthma, hay fever, hives." In item 39 of the same report, under "Physician's Summary and Elaboration of All Pertinent Data," there appears among others not here pertinent, the entry "History of hypertension."

I find that petitioner's hypertension at the time of the examinations of November 29, 1966, July 24, 1967, and Novem-

ber 8, 1967, was "labile," that is, variable and would come down to normal or close to normal. It was not "fixed" hypertension, that is, it would not remain constantly at points higher than the limits stated in AR 40–501, 2–19 *(supra)*. Petitioner's condition of hypertension was remediable. There was no secondary (heart, kidney, eye) involvement. Although when he examined petitioner on July 17, 1968, Dr. Davidoff found petitioner's blood pressure readings to be 150/100, 150/94, 160/110, and 165/105, the readings taken by a medical officer on December 19, 1968, were 160/90, 150/85, 150/90, 140/80, 120/80 (Exhibit 9).

After induction petitioner was assigned to a training company and went through his basic training without difficulty except for a "slipped" hernia which kept him off duty for about three days and thereafter reduced his participation in physical exercises. Up to December 5, 1968, his Army Health Record (Exhibit 8) shows no complaint of headaches or other entries indicative of hypertension.

A week after his induction petitioner applied for OCS. He signed a "Statement of Understanding" (Exhibit 12) which stated in part:

"1. In connection with OCS, I hereby acknowledge that I completely understand the following:

\*　\*　\*　\*　\*　\*

"b. That throughout my training I must be prepared to meet rigor-

ous physical, mental, and psychological requirements that are designed to simulate the strains of combat."

At some unspecified time he withdrew his application for OCS.

He also applied for the Airborne service knowing that such service had high physical requirements and standards of training more exacting than basic training.

He took and passed at least three physical training tests for basic.

Until June 1968 petitioner never discussed his pre-induction physical examinations with anyone.

In June 1968 he received orders assigning him to Vietnam. In the latter part of June 1968, after he received the orders, he first became aware in discussions with friends of his possible illegal induction into the service.

In June, July and August he consulted with members of the New England Resistance about the possible illegality of his induction.

On November 26, 1968, he filed his petition in this Court for a writ of habeas corpus.

Petitioner has never sought or attempted to pursue any available administrative remedies within the Army.[5]

## CONCLUSIONS OF LAW

The physical examination given to petitioner on July 24, 1967, the physical inspection given him on November 8, 1967, and his induction into the United States Army complied with the requirements of Army Regulation 601–270.

---

5. Army Regulation 635–200 provides as follows:
　"5–5. *Erroneous induction.* a. Enlisted personnel erroneously inducted in the Army will be released from custody and control of the Army \* \* \* [exceptions not here pertinent].
　b. An individual claiming erroneous induction because of denial of a procedural right as provided by the Military Selective Service Act of 1967, may submit a request for release from custody and control of the Army \* \* \* [procedure set forth]."

Army Regulation 635–200 further provides:
　"5.9.1. *Inductees who did not meet the medical fitness standards at time of induction.* a. Individuals inducted in the Army when they did not meet the medical fitness standards for induction will be released from custody and control of the Army by virtue of a void induction \* \* \* [exceptions and procedures stated]."

Petitioner was not denied the right and opportunity to be found medically unqualified for military service as provided by 50 App.U.S.C. § 454(a).

Petitioner was not denied due process of law.

Petitioner was lawfully inducted into the United States Army. His induction was neither illegal nor void.

The petitioner is lawfully in the custody of the defendant and is not being detained by the defendant in violation of law.

The defendant also contends that the writ should not issue because the petitioner did not exhaust his administrative remedies within the Selective Service System and has not exhausted his remedies under Army Regulation 635–200. The defendant's contention is not without merit. The courts are divided on the question.

This case, however, has been fully tried on the merits and should be decided on the merits. It is not necessary, therefore, to pass upon the question whether petitioner should have exhausted his administrative remedies before applying for the writ.

It is ordered that the petition be dismissed on the merits.